UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEBRA A. GARGIULO, M.D., )
                Plaintiff )
)
)
       v. ) Civil Action No. 11-30017-MAP
)
)
BAYSTATE HEALTH, INC. and )
BAYSTATE MEDICAL CENTER )
INC., )
)
                Defendants )

MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO
COMPEL PRODUCTION OF DISCOVERY AND ENTER A PROTECTIVE ORDER
(Document No. 26)
July 15, 2011

NEIMAN, U.S.M.J.

Debra Gargiulo ("Plaintiff"), a former medical resident, brings suit against Baystate Health, Inc., and Baystate Medical Center, Inc. (collectively "Defendants"), claiming they discriminated against her based on her age and disability and, further, retaliated against her for engaging in protected conduct. Presently before the court is Plaintiff's Motion to Compel Discovery and Enter a Protective Order. Plaintiff seeks numerous documents relating to her records, evaluations and reports, as well as those of similarly situated comparators in Defendants' medical residency program. The documents sought are related to both Plaintiff's federal and state claims.

Defendants oppose discovery, asserting that the documents are subject to the Massachusetts medical peer review privilege, Massachusetts General Laws, Chapter 111 §§ 203-205), and therefore not subject to subpoena or discovery. Alternatively,

1

Defendants assert that the court should recognize a federal common law medical peer review privilege that would, in effect, bar discovery. In response, Plaintiff contends that, for the most part, federal courts have not recognized a medical peer review privilege and that, even if state law were to apply here, the documents sought are not covered by the privilege. For the reasons which follow, Plaintiff's motion will be allowed.

I. DISCUSSION

The Massachusetts legislature has enacted a medical peer review privilege which states, in part, that "the proceedings, reports and records of a medical peer review committee shall be confidential and . . . shall not be subject to subpoena or discovery, or introduced into evidence, in any judicial or administrative proceeding." Mass. Gen. Laws ch. 111 § 204(a). The "obvious purpose of the statutory medical privilege is to promote candor and confidentiality . . . and to foster aggressive critiquing of medical care by the providers peers." *Pardo v. Gen. Hosp. Corp.*, 841 N.E.2d 692, 700 (Mass. 2006) (internal quotation marks and citations omitted). The privilege was "bolstered" after "a perceived medical malpractice crisis and doubts about the efficacy of self-regulation by the medical profession." *Carr v. Howard,* 689 N.E.2d 1304, 1306 (Mass. 1998). In essence, the privilege provides "weighty protection to a medical peer review committee's work product and materials." *Vranos v Franklin Medical Center*, 862 N.E.2d 11, 18 (Mass. 2007).

Evidentiary privileges in the federal courts, however, are governed by Federal Rule of Evidence 501, which provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person,

2

> government, State, or political subdivision thereof shall be governed by
> the principles of the common law as they may be interpreted by the courts
> of the United States in the light of reason and experience. However, in civil
> actions and proceedings, with respect to an element of a claim or defense
> as to which State law supplies the rule of decision, the privilege of a
> witness, person, government, State, or political subdivision thereof shall
> be determined in accordance with State law.

Fed. R. Evid. 501. With this rule in mind, Defendants argue that, since Plaintiff cited diversity as the basis for this court's jurisdiction, the court is bound to apply Massachusetts peer review privilege to all claims. *See Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 401 (1st Cir. 2005) (applying state law informant's privilege in diversity case involving only state law claims). Relatedly, Defendants assert that Plaintiff's state law claims of discrimination predominate over her federal claims.

The basis of a federal court's jurisdiction does matter. With diversity jurisdiction, courts usually apply state privilege law to all state claims. *Id.* With federal question jurisdiction, courts usually apply federal common law to the federal claims and pendent state law claims. *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 227 (D. Mass. 1997).

Here, there is the little question that Plaintiff, in the jurisdictional section of her complaint, invokes diversity jurisdiction; Plaintiff is an Ohio resident and Defendants are Massachusetts entities. The court, however does not believe it is bound to apply state privilege law merely because of Plaintiff's invocation of diversity jurisdiction, as Defendants would have it. Plaintiff's complaint also raises claims under the Americans with Disabilities Act ("ADA") and Age Discrimination in Employment Act ("ADEA"), both of which support federal jurisdiction pursuant to 28 U.S.C. § 1331, and the court is disinclined to promote form over substance in order to address the present dispute. Not only could the complaint be easily amended but, in the court's view, it is sufficient that

viable federal claims are apparent on the face of the complaint. *Cf. Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002) ("Rule 8(a)(1) is satisfied if the complaint say[s] enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear.") (internal quotation omitted); *Schlesinger v. Councilman,* 420 U.S. 738, 744-45 n.9 (1975) ("The 'complaint' . . . nowhere mentioned § 1331 . . . [but] [t]he facts alleged and the claim asserted nonetheless were sufficient to demonstrate the existence of a federal question.").

That said, the court notes that neither the Supreme Court nor the First Circuit has annunciated a rule for situations, such as the one presented here, in which both bases for jurisdiction are present and where state and federal law provide competing answers regarding discovery of medically peer reviewed materials. *See Jaffee v. Redmond*, 518 U.S. 1, 17 n.15 (1996) ("We note that there is disagreement concerning the proper rule in cases such as this in which both federal and state claims are asserted in federal court and relevant evidence would be privileged under state law but not under federal law . . . . Because the parties do not raise this question and our resolution of the case does not depend on it, we express no opinion on the matter."). To be sure, some courts have looked to state privilege law for documents related to the state causes of action in the matter. *See, e.g.*, *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir.1995) (applying state privilege law to a state cause of action in a case with both federal and state claims). However, in cases where the documents relate to both the federal and state law claims, the federal circuits have uniformly determined that "applying two separate disclosure rules with respect to different claims tried to the same jury would be

unworkable" and have gone on to hold that, "when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Wm. T. Thompson Co. v. General Nutrition Corp.,* Inc., 671 F.2d 100, 104 (3d Cir. 1982). *See also Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n.3 (4th Cir. 2001) ("We agree with our sister circuits that in a case involving both federal and [pendent] state law claims, the federal law of privilege applies."); *Hancock v. Dodson*, 958 F.2d 1367, 1372-73 (6th Cir. 1992) ("the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege"); *Pearson v. Miller*, 211 F.3d 57, 66 n.8 (3d Cir. 2000) (applying federal privilege law because all documents were related to both state and federal claims); *Cf. von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) (applying federal common to both federal and pendent state law claims).

This court, as have other courts in this district, agrees with this approach. *See Krolikowski v. Univ. of Massachusetts*, 150 F. Supp. 2d 246, 248 (D. Mass. 2001) (declining to apply Massachusetts peer review privilege in a case involving state and federal employment discrimination claims); *Vanderbilt,* 174 F.R.D. at 227 (applying federal privilege law to pendent state law claims). Moreover, the court finds unpersuasive Defendants' argument that Plaintiff's state law claims predominate over her federal law claims. They are all viable at this time and nothing foreclosed Plaintiff from bringing suit under both state and federal law.

Anticipating the court's approach, Defendants, in the alternative, ask that the court recognize a new federal common law privilege with regard to medical peer review documents. Defendants pursue that request despite their knowledge that "[n]o court in

5

the First Circuit or District of Massachusetts has yet done so under federal law." *In re Admin. Subpoena Blue Cross Blue Shield of Massachusetts, Inc.,* 400 F. Supp. 2d 386, 389 (D. Mass 2005). Defendants argue that there is near national agreement about the need for a medical peer review privilege at the state level, s*ee* Susan O. Scheutzow, *State Medical Peer Review: High Cost But No Benefit - Is It Time for a Change?* 25 AM. J.L. & MED. 7, 28 (1999) (noting that at least 47 states and the District of Columbia have now enacted some form of the privilege), and that accepting such a privilege at the federal level would promote this consensus as well as uniformity.

The First Circuit has articulated a two prong test for determining whether to recognize state privilege under federal common law: first, "whether the courts of Massachusetts would recognize such a privilege" and, second, "whether the state's asserted privilege is "intrinsically meritorious in [the court's] independent judgment." *In re Hampers*, 651 F.2d 19, 22 (1st Cir. 1981). Here, assuming *arguendo* that Massachusetts would recognize the documents sought as privileged, Plaintiff's assertion to the contrary, the court has looked at the intrinsic merit of the privilege asserted.

To determine whether the medical peer review privilege is "intrinsically meritorious," a court usually evaluates four factors: "(1) whether the communications originate in a confidence that they will not be disclosed, (2) whether this element of confidentiality is essential to the full and satisfactory maintenance of the relations between the parties, (3) whether this relationship is one which ought to be sedulously fostered, and (4) whether the injury that would inure to the relation by the disclosure of the communications would be greater than the benefit thereby gained for the correct

disposal of litigation." *In re Admin. Subpoena*, 400 F. Supp. 2d at 391 (citing *Hampers*, 651 F.2d at 23-24). These factors need not be applied in order and, if the court answers in favor of the party seeking disclosure on any one of these factors, the privilege is not recognized. *Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 4 (D. Me. 2000) (citing *Smith v. Alice Peck Day Mem'l Hosp.*, 148 F.R.D. 51, 56 (D.N.H.1993)).

In the court's view, the fourth factor, which essentially weighs the federal interest against the state interest, is determinative. In short, "[i]t makes a difference whether the federal interest in seeking full disclosure is a weak or strong one." *Hampers,* 651 F.2d at 22. Here, the court finds, the federal interest is quite strong, particularly as it applies to the types of claims pursued by Plaintiff in the case at bar.

First, the few federal courts that have recognized medical peer review privilege have done so in the context of medical malpractice claims. *See, e.g.*, *Francis v. United States*, 2011 WL 2224509 at *5 (S.D.N.Y. May 31, 2011) (recognizing "a privilege protecting peer review records from disclosure in medical or dental malpractice actions would promote the interests of health care practitioners, health care facilities and the public"). Plaintiff's complaint, however, does not claim medical malpractice but, rather, asserts civil rights and employment discrimination claims. In such instances, other courts in this circuit have refused to create a medical peer review privilege, *see Krolikowski*, 150 F. Supp. 2d at 248; *In re Admin. Subpoena*, 400 F. Supp. 2d at 391-92; *Marshall*, 198 F.R.D. at 5, and this court has not been persuaded to take a different approach.

Second, the Supreme Court has cautioned against recognizing privileges broadly, given that such privileges "contravene the fundamental principle" that the public

and each party has a right to the other side's evidence. *Trammel v. United States*, 445 U.S. 40, 50 (1980). This is not to say that a medical peer review privilege does not serve an important interest in promoting quality health care; indeed, the Massachusetts privilege was enacted after the legislature determined that "the quality of health care is best promoted by favoring candor in the medical peer review process." *Vranos*, 862 N.E.2d at 18. *See also Swatch v. Treat*, 671 N.E.2d 1004, 1007 (1996) (citing cases) ("[t]he ability of committee members to speak with candor . . . would be seriously hampered by public release of proceedings or reports of the peer review body."). Rather, the court simply believes that the medical peer review privilege which Defendants urge the court to adopt, insofar as it would go far beyond the malpractice context, would cut too broad a swath.

Third, the Supreme Court has also directed federal courts to be "especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself." *Univ. of Pa. v. EEOC,* 493 U.S. 182, 189 (1990). That appears to be the very situation with regard to a medical peer review privilege. Aware of a growth in medical malpractice claims, Congress, in the Health Care Quality Improvement Act of 1986 ("HCQIA"), extended qualified immunity from suit to medical professionals involved in a defined medical peer review process. *See* 42 U.S.C. § 11111(a). Congress declined, however, to create a federal evidentiary privilege for most documents produced during such reviews. *See In re Admin. Subpoena,* 400 F. Supp. 2d at 390. Thus, Congress "not only considered the importance of maintaining the confidentiality of the peer review process, but took the action it believed would best balance protecting such

confidentiality with other important federal interests." *Teasdale v. Marin Gen. Hosp.*, 138 F.R.D. 691, 694 (N.D. Cal. 1991). Most importantly for present purposes, "Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials." *In re Admin. Subpoena*, 400 F. Supp. 2d at 390-91.

In sum, the court believes the federal interest in fighting discrimination weighs in favor of disclosure. *See Univ. Of Pa. v. EEOC,* 493 U.S. at 193 ("Few would deny that ferreting out . . . invidious discrimination is a great, if not compelling, government interest."). While it is important to "promote candor and confidentiality in the review process," *Carr*, 689 N.E.2d at 1307, the privilege ought not be used as a shield against violations of federal discrimination law. *See Patt v. Family Health Sys., Inc.*, 189 F.R.D. 518, 525 (E.D. Wis. 1999) (noting that the need for "confidentiality is outweighed by the interest in providing individuals with the means to vindicate their civil rights"). The HCQIA specifically waived immunity for physicians on a peer review committee for cases arising out of violations of civil rights. 42 U.S.C. § 11111(a). This carve out, in conjunction with the bill's silence on medical peer review privilege, and the general federal interest in battling discrimination, tips the scale in favor of disclosure.

## II. CONCLUSION

For the reasons stated, Plaintiff's Motion to Compel Production of Discovery is ALLOWED, and Defendants shall forthwith produce the requested documents. In carrying out this order, the parties may enter a protective order which maintains the confidentiality of the reviewing party members and any patients mentioned in the documents. The Clerk's Office shall set a date for a further scheduling conference.

IT IS SO ORDERED.

DATED: July 15, 2011

                                                        /s/ Kenneth P. Neiman
                                                        KENNETH P. NEIMAN
                                                        U.S. Magistrate Judge