# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF MASSACHUSETTS

### Springfield Division

| | | |
|---|---|---|
| DEBRA A. GARGIULO, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  11cv30017 |
| | ) | |
| BAYSTATE HEALTH, INC. and | ) | |
| BAYSTATE MEDICAL CENTER, INC., | ) | |
| | ) | |
| Defendants. | ) | Leave to File Granted on October 3, 2011 |
| | ) | |

## PLAINTIFF'S SUR REPLY BRIEF IN RESPONSE TO DEFENDANTS' BRIEF IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S RULING AND MOTION FOR SEPARATE TRIALS

The plaintiff, Debra A. Gargiulo, M.D. ("Dr. Gargiulo"), submits this Sur Reply Brief in response to the defendants' Reply Brief in Support of Objections to Magistrate Judge's Ruling and Motion for Separate Trials ("Reply Brief").  The defendants, Baystate Health, Inc. and Baystate Medical Center, Inc. (collectively, "Baystate"), submitted their Reply Brief to answer arguments made by Dr. Gargiulo in Plaintiff's Response to Defendants' Objections to the Magistrate Judge's Allowance of Her Motion to Compel Discovery and Entry of a Protective Order ("Response to Defendants' Objections") (Docket No. 37) and her Opposition to Defendants' Motion for Separate Trials (Docket No. 36) that were not addressed in the Magistrate Judge's Order.  Specifically, Baystate challenges (1) Dr. Gargiulo's inference that the Magistrate Judge rejected the notion of separate trials for her state and federal claims; (2) her inference that the Magistrate Judge ordered Baystate to produce all of the documents and other information the plaintiff had requested in her Motion to Compel (Docket No. 26) over Baystate's objections on relevance grounds; and (3) Dr. Gargiulo's continuing to maintain that the

documents and other information she is seeking are not subject to Massachusetts' medical peer review privilege.

**Argument**

I.    **The Plaintiff's Inference That The Magistrate Judge Rejected The Notion of Separate Trials Was Reasonable.**

Baystate initially raised the notion of separate trials for the plaintiff's federal and state claims in its Opposition to Plaintiff's Motion to Compel Production of Documents (Docket No. 29). Baystate argued that the Court should enforce the Massachusetts medical peer review privilege by either recognizing a federal common law peer review privilege or applying the Massachusetts peer review privilege to both the plaintiff's federal and state claims. If, however, the Court declined to adopt either of these approaches, Baystate indicated it would seek to dismiss Dr. Gargiulo's state court claims, without prejudice, to allow her to file those claims in state court, or, alternatively, move to bifurcate her state and federal claims for discovery and trial, with the parties represented by separate sets of counsel for each set of claims in order to preserve the confidentiality and the peer review privilege with respect to her state law claims.[1] Baystate offered no authority for its extraordinary proposal in its [Opposition] to Plaintiff's Motion to Compel.[2]

---

[1] Although Baystate did not request separate trials in its pleading - it said it would seek it only if the Court did not recognize a federal privilege or apply Massachusetts' peer review privilege to both the plaintiff's federal and state claims, it described itself in its Objections to Magistrate Judge's Ruling on Plaintiff's Motion to Compel and for Entry of a Protective Order (Docket No. 33) at page 2 as having "argued" for bifurcation of Dr. Gargiulo's federal and state claims for discovery and trial in its Opposition to Plaintiff's Motion to Compel.

[2] None of the cases Baystate subsequently cited as authority in its Memorandum of Law in Support of Defendants' Motion for Separate Trials of Plaintiff's State and Federal Law Claims (Docket No. 35) involve the bifurcation of federal and state claims for discovery and trial to preserve a state medical peer review privilege.

2

Dr. Gargiulo opposed Baystate's proposal in Plaintiff's Reply [p 10, n.3] on the grounds that in view of settled precedent that federal law governs privilege in cases involving both federal and state claims where the operative facts are the same, there was no reason to force her either to proceed in two courts on the same claims or to try her federal and state claims separately in federal court.

At the June 15 hearing on Dr. Gargiulo's Motion to Compel, therefore, although counsel did not discuss Baystate's proposal and the Magistrate Judge did not mention it then[3] or address it in his Order, as Dr. Gargiulo acknowledged in her Opposition to Defendants' Motion for Separate Trials of Her State and Federal Claims, the idea of separate trials had clearly been raised. This does not mean that the Magistrate Judge could not have taken cognizance of the issue.  Accordingly, when the Magistrate Judge refused to recognize a federal peer review privilege or apply the Massachusetts privilege to the plaintiff's federal claims, which was the contingency upon which Baystate urged bifurcation of Dr. Gargiulo's federal and state claims for discovery and trial, she felt it was reasonable to infer that the Magistrate Judge had rejected the "notion," at least, of separate trials.[4]

## II.     The Inference That The Magistrate Judge Ordered Baystate to Produce All Documents Over its Relevance Objection, Was Also Reasonable.

---

[3] The closest the Magistrate Judge seems to have come to mentioning Baystate's proposal either that it would move to dismiss the plaintiff's state claims for re-filing in state court or for separate trials, was in response to something Baystate's counsel said where he could have been referring to both approaches:

> THE COURT:   How would that play – you know, I know that you're sort of suggesting that – you had some suggestions about all sorts of complicated ways:   Sever, remand.

Exhibit 2 to Plaintiff's Reply Brief, p. 36, l. 2-4.

[4] Although Baystate's motion for separate trials provides for a slightly different approach than it proposed in its Opposition to Plaintiff's Motion to Compel, e.g., Baystate drops the requirement of separate sets of counsel for the trials of the plaintiff's federal and state claims in its motion, the important point is that they both call for separate trials.

**A.    Dr. Gargiulo did not address Baystate's relevance objection in her Motion to Compel because Baystate never informed her that it intended to press it.**

When Baystate's counsel raised the subject of its relevance objection at the June 15 hearing before the Magistrate Judge, this was the first Dr. Gargiulo's counsel understood that Baystate intended to press this objection after it had initially objected to several of her discovery requests on relevance grounds. Affidavit of Nicholas M. Kelley, ("Kelley Aff.") (attached to Dr. Gargiulo's Response to Defendants' Objections), Paragraph 11.  It was also the first time Dr. Gargiulo understood the general substance of Baystate's relevant objection, although Baystate still has not articulated its objection in full.  Dr. Gargiulo's counsel understood instead that Baystate was concerned only with its objections based on the Massachusetts peer review privilege and confidentiality following their discovery conferences prior to Dr. Gargiulo's filing her Motion to Compel.  Kelley Aff., Paragraph 5.  If plaintiff's counsel had understood Baystate meant to press its relevance objection, they would certainly have addressed the subject in the Motion to Compel, in order to resolve all of Baystate's objections at one time and avoid the confusion and delay of a piecemeal approach to discovery. Consistent with Dr. Gargiulo's counsel's understanding that Baystate did not intend to make relevance an issue going forward, Baystate did not respond at all to the Motion to Compel's explicit identification of confidentiality and the peer review privilege as the only discovery issues that remained to be resolved between the parties.  For these reasons, plaintiff's counsel responded in the affirmative when the Magistrate Judge asked counsel to confirm that the resolution of the peer review and confidentiality issues identified in the Motion to Compel would resolve all outstanding discovery disputes.

**B.    Even though Dr. Gargiulo did not address Baystate's objection in her Motion to Compel, the Magistrate Judge heard argument on relevance and ordered Baystate's production of documents without any limitation for relevance.**

When, however, Baystate's counsel informed the Court at the June 15 hearing that Dr. Gargiulo's Motion to Compel did not address the defendants' "relevance" objection, the Magistrate Judge explored Baystate's relevance objection with both counsel, focusing on Dr. Gargiulo's request for comparative information about all of the other residents in the surgical residency program at Baystate, not just those who belonged to smaller subsets of that group who, Baystate urged, were more "similarly situated." Based on the Magistrate Judge's hearing argument on relevance, and given his resulting Order requiring Baystate to produce all of the documents and information Dr. Gargiulo had requested in her Motion to Compel without any limitation or exception, she reasonably inferred that the Magistrate Judge allowed her motion over Baystate's relevance objection.

Accordingly, Dr. Gargiulo's counsel did not have the impression that the Magistrate Judge refused to address Baystate's relevance objections as not before him, notwithstanding the two comments he made which are cited by Baystate.

In fact, Baystate conflates the two comments, the first of which was, "I can't resolve it now because it hasn't been addressed," after Baystate's counsel had argued that the plaintiff had requested information about 80 other residents between 2004 and the present but that the only appropriate comparators were smaller subsets of the total, e.g., residents, who, like Dr. Gargiulo, had not been promoted or who had taken medical leaves. Read in the context of his complete remarks however, it appears the Magistrate Judge's principal focus was on the time frame for which Baystate might have to produce records concerning other surgical residents:

> THE COURT:   Okay. Well, I can see, perhaps, there being a
> limit with regard to a time frame. You know, there may be a time
> frame about while she was there, and maybe somewhat before
> and somewhat after, I might see something like that. But I'm not
> sure, and I can't resolve it now because it hasn't been addressed,
> you know, as to trying to then -- and how many residents do you
> say would fall -- you said 80 altogether, but how many would be
> eliminated, if we're just talking about a time frame, not talking

5

about the other sort of limitations that you would want to have
imposed?

Exhibit 2 to Baystate's Reply Brief, p.14, l.16-25.

The time frame was a non-issue, as counsel had already agreed that Baystate would

produce information for the period 2002-2010, which Baystate's counsel acknowledged later

during the hearing. Ex. 2 to Baystate's Reply Brief, p.16, l.19-25.  More importantly, however,

the Magistrate Judge went on to hear more argument from counsel for both parties on relevance

issues.  He seemed to recognize he was doing this in the following exchange with Baystate's

counsel:

> THE COURT: Now, I'm addressing everything that's not in the
> motions.
> MS. KENNEDY: Yes.

Ex. 2 to Baystate's Reply Brief, p.16, l.6-8.

The second comment by the Magistrate Judge on which Baystate relies was "you want to

do a certain limitation having to do with individuals who might have this notion of someone

being similarly situated."  The complete text of his comment shows that he did not direct it to

both parties but to Baystate's counsel as a restatement of Baystate's position that he limit

comparators.  Exhibit 2 to Plaintiff's Reply Brief, p.17, l.1-4.  That he did not mean his remark to

end discussion about comparators is borne out by his hearing almost immediately afterwards

from Dr. Gargiulo's counsel about her need for information about all other residents.

    **C.**    **Baystate has failed to show that the information Dr. Gargiulo seeks
concerning other surgical residents is not relevant.**

Denying Dr. Gargiulo information about all other surgical residents – not just those who

may have shared certain experiences with her, would prevent her and the fact finder from

knowing the standards against which her performance was measured or the basis for Baystate's

denial of the allegation in Paragraph 66 of her Complaint that she was as qualified as any other

surgical resident to have an opportunity to complete Baystate's program.  Thus, to limit

comparators to other residents who were not promoted and/or were asked to remediate, for

example, and not permit her to have access to information about other residents who were

younger and/or did not have a disability and were promoted, would be unduly restrictive,

particularly at the discovery stage.  Although Federal District Courts have broad discretion in

managing discovery, "they are bound to adhere 'to the liberal spirit of the [Federal] Rules.'"

*Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007) (quoting *Burns v. Thiokol Chem. Corp.*,

483 F.2d 300, 305 (5th Cir. 1973).  Neither do the Federal Rules grant "blanket authorization…to

prohibit disclosure of information whenever [the court] deems advisable to do so" but rather

function as a "grant of power to impose conditions on discovery in order to prevent injury,

harassment, or abuse of the court's processes." *Id.* (quoting *Williams v. City of Dothan, Ala.*, 745

F.2d 1406, 1416 (11th Cir. 1984) (internal quotation marks omitted).

    For these reasons, Dr. Gargiulo relies on decisions allowing plaintiffs discovery of

broader comparator groups as most appropriate for the claims and defenses in her case.  *See*

*Adkins*, 488F. 3d at 1331 ("[Plaintiff] is entitled to compare the general standard that hospital

physicians were held to in order to establish that his punishment was excessive."); *Momah v.*

*Albert Einstein Medical Center*, 164 F.R.D. 412, 417 ("[Plaintiff] seeks production of the

personnel records and performance evaluations of other residents…to support his allegation that

non-African residents received more favorable treatment. Such an allegation is relevant to an

employment discrimination action….").

    Each of the cases cited by Baystate in support of its argument that Dr. Gargiulo is not

entitled to access about all other residents presented different factual or procedural issues than

this case.  In *Whittingham v. Amherst College*, 164 F.R.D. 124, 126 (D. Mass. 1995), the

minority plaintiff claimed he had not been promoted within the admissions office at Amherst on

account of his race and sought information about three former minority deans in the admissions office. Magistrate Judge Neiman refused to grant the discovery in part because the plaintiff had not articulated a reason for needing the information. He had not shown, for example, that the deans had suffered any discrimination themselves. (The Magistrate Judge also denied the plaintiff's report for information concerning certain faculty members, which group never included the plaintiff.) Dr. Gargiulo seeks instead to show that because she was a member of a protected class, she was treated differently than non-members. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11 (1st Cir. 1994) did not address the issue of appropriate comparators at the discovery stage but in connection with the granting of summary judgment. Even so, the plaintiff's essential claim was that she had been treated differently than other vice presidents, whose performance had also been found wanting, which was why the court decided she was not entitled to information about other vice presidents whose performance had been questioned. Here, of course, Dr. Gargiulo does not accept that her performance was inadequate measured against her peers. The plaintiff in *Kanaji v. Philadelphia Child Guidance Ctr. of Children's Hosp.*, 2001 U.S. Dist. LEXIS 8670, at *10 sought information concerning the job qualifications of all persons who shared his position, as well as other "similarly situated" employees, to show he was equally or better qualified than they were for the position from which he had been terminated for altering a written report to his superiors. The plaintiff claimed his termination was the result of discrimination, but the court determined that his job qualifications relative to his colleagues' was not relevant and denied the discovery.

Baystate continues to insist that information, including information about most other surgical residents, concerning events before December 17, 2008 is not relevant for any purpose. Even if it were to be determined that none of Baystate's conduct constitutes a continuing violation, conduct occurring before December 17, 2008 is relevant and admissible, at a

8

minimum, to establish the background and context for the events that occurred from and after

that time. *See O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001) ("Indeed, the

Supreme Court has observed that '[a] discriminatory act which is not made the basis for a timely

charge…may constitute relevant background evidence in a proceeding in which the status of a

current practice is at issue.'"), quoting *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

*Accord Ruffino v. State Street Bank & Trust Co.*, 908 F.Supp. 1019, 1040, n.38 (D. Mass. 1995);

*Cuddyer v. Stop & Shop Supermarket Co.*, 434 Mass. 521, 541 (2001).

Baystate also argues that information covering most other residents is not relevant

because Dr. Gargiulo's performance was not measured against the performance of her peers but

against published requirements for the surgical residency program.  Even assuming Dr. Gargiulo

and the other residents were nominally evaluated using the same standards, this does not mean

the standards were uniformly applied to every resident, which is why it is critical for Dr.

Gargiulo to have not only her own evaluations and test scores but the evaluations and test scores

for other residents. This information is particularly relevant as Baystate has denied Dr. Gargiulo

was as qualified as any other resident at Baystate.

### III.    The Documents and Other Information Plaintiff Seeks Are Not Subject to Massachusetts Medical Peer Review Privilege

Dr. Gargiulo will rely on her Motion to Compel and on her Response to Defendants'

Objections as support for her argument that the documents and information she seeks are not

peer review privileged materials, except to address briefly again Baystate's assertion that she

continues to misconstrue *Pardo v. General Hospital Corp.*, 446 Mass. 1 (2006), "with regard to

the discoverability of medical peer review documents in employment cases." The plaintiff has

cited *Pardo* for the proposition that Massachusetts courts consider "peer review" materials to be

privileged only if they were generated by or for the purpose of the work of a formal peer review

committee, convened to deliberate in response to a particular event or issue brought to its

9

attention. Id at 10-11. In *Pardo*, the plaintiff claimed that he was unlawfully denied a promotion

and sought the production of comparative promotional information. The Supreme Judicial Court

(the "SJC") upheld the Superior Court's refusal to require the production of documents generated

in the course of a formal peer review process, but approved its orders to depose key witnesses

and to produce such documents as comparative promotional files; the transcripts and other

records of the staff review committee that made the adverse decisions challenged by the plaintiff;

all residency teaching evaluation files of medical staff members within a six year period; and

various memoranda setting forth concerns about the plaintiff's professional conduct, Id. at 8-10

& n. 20 - in other words, the same types of documents and information Dr. Gargiulo seeks in this

case. She also has cited *Pardo* decision as authority for the proposition that Massachusetts has a

strong policy interest in combating discrimination, although she was, and is, aware that

notwithstanding this policy, the SJC determined that certain documents requested by the plaintiff

were subject to the Massachusetts peer review privilege and would not order their production.

Respectfully submitted,
DEBRA A. GARGIULO, M.D.,

By her attorneys,

/s/ Nicholas M. Kelley
Anne L. Josephson, BBO #254680
Nicholas M. Kelley, BBO #265640
Michelle A. Moor, BBO # 670992
Heidi S. Alexander, BBO # 677212
Kotin, Crabtree & Strong, LLP
One Bowdoin Square
Boston, MA 02114
Tel: (617) 227-7031
Fax: (617) 367-2988
ajosephson@kcslegal.com
nkelley@kcslegal.com
mmoor@kcslegal.com
halexander@kcslegal.com

Certificate of Service

I, Nicholas M. Kelley, hereby certify
that this document, filed through the ECF System,
will be sent electronically to the registered participants
as identified on the Notice of Electronic Filing (NEF),
and paper copies will be sent to those indicated as
non-registered participants on October 11, 2011.

/s/ Nicholas M. Kelley
Nicholas M. Kelley

Dated:  October 11, 2011